# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Milton I. Shadur | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 CR 35 | **DATE** | 11/23/2004 |
| **CASE TITLE** | USA vs. James Parks | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. In sum, Parks' effort to invoke the writ of coram nobis fails here for precisely the reasons that have been explained in the quoted excerpt from the Esogbue opinion and, among others, the cases cited there. Hence Parks' motion for such relief is denied out of hand. (56-1, 56-2)

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | NOV 23 2004 | |
| | Notified counsel by telephone. | | date docketed | |
| | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | 11/23/2004 | |
| SN | courtroom deputy's initials | Date/time received in central Clerk's Office | date mailed notice SN mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

UNITED STATES OF AMERICA,    )
                             )
            Plaintiff,       )
                             )
     v.                      )   No. 01 CR 35
                             )
JAMES PARKS,                 )
                             )
            Defendant.       )

MEMORANDUM OPINION AND ORDER

James Parks ("Parks") has just submitted two documents--one captioned "Motion To Vacate and Set Aside Judgement [sic] and Expunge the Record in Nature of Coram Nobis" ("Motion") and the other headed "Points of Authorities in Support of Motion To Vacate and Set Aside Judgment and Expunge the Record in Nature of Coram Nobis" ("Memorandum" or "Mem.")--through which he again seeks to undo his 2001 conviction on a charge of conspiracy to commit extortion under color of official right (see 18 U.S.C. §1951). Because the Motion carries its own death warrant (a conclusion actually fortified by the Memorandum), this Court denies the Motion as insufficient as a matter of law.

It is of course true that coram nobis would be the appropriate remedy to be invoked if Parks were to qualify for the relief that he seeks, because he is no longer in custody (Mem. 2 states that Parks completed serving his 30-month custodial sentence on April 2, 2004, and his filing lists him as having resumed his earlier residential address in University Park,

Illinois). But Parks' filings show that he clearly does not qualify for any relief at all, for they are flawed both (1) in terms of the claims of constitutional infirmity that he advances and (2) because of his prior history in this litigation.

It should be emphasized to begin with that Parks was sentenced by this Court only after he (then represented by the second of his three lawyers) had entered into a July 18, 2001 Plea Agreement, followed by his same-day plea of guilty pursuant to that agreement. And that guilty plea took place only after this Court (1) had engaged in its invariable close questioning in strict compliance with Fed. R. Crim. P. ("Rule") 11(b) to assure that the plea was voluntary and had been entered into with a full understanding of the nature and effect of such a plea and (2) had required Parks to state in his own words the nature of his conduct, to confirm the existence of a factual basis for every element of the charged offense (because this Court prefers not to rely on lawyer-drafted plea agreements in that regard, lest a defendant might later contend that he or she had not understood what was being admitted in factual terms, it customarily complies with Rule 11(b)(3) by posing an open-ended question to defendant). In the latter respect and importantly for present purposes, Parks then expressly acknowledged the commission of an overt act within the period of limitations in furtherance of the charged conspiracy.

Despite his having done so, Parks thereafter filed a 28 U.S.C. §2255[1] motion to vacate his conviction and the consequent 30-month sentence, urging (1) a claimed absence of jurisdiction because the statute of limitations had assertedly expired before the indictment was returned, as well as (2) a related claim as to the constitutionally ineffective assistance of counsel for having permitted Parks to proceed to plea and sentence when that purported defect existed. This Court dismissed that Section 2255 motion summarily in a November 19, 2002 memorandum opinion and order, followed by a January 3, 2003 memorandum order (photocopies of both those rulings are attached). Then both this Court and thereafter the Court of Appeals denied Parks a certificate of appealability.

Nothing if not persistent, here Parks again presents a claim of untimeliness (and hence a purported lack of jurisdiction) as well as a passel of other asserted jurisdictional defects. Although it is not necessary for the reason stated hereafter to deal in detail with the hodgepodge of contentions that Parks advances, a representative sampling illustrates the poverty of his contentions.

First, as to Parks' principal contention that the indictment was untimely (by being returned more than five years after any

---

[1] All further references to Title 28 provisions will simply take the form "Section--."

criminal activity had assertedly ceased), so as to deprive the court of jurisdiction, it takes only a moment to reject that position. Quite apart from the fact that the statute of limitations generally provides an affirmative defense rather than constituting a jurisdictional flaw, Parks' Plea Agreement <u>expressly</u> confirmed that the charged conspiracy had continued through March 1996--less than five years before the indictment was returned in January 2001. And that was expressly reconfirmed during the proceeding that concluded with Parks' plea of guilty in accordance with the Plea Agreement.

Next, Parks' related argument of preindictment delay is a nonstarter under the caselaw that deals with such claims of delay. Moreover, that argument, which is written as though the government fabricated the charges against Parks and others, is a total distortion in factual terms--once again in light of the facts that Parks himself admitted in his Plea Agreement and guilty plea.

Next, Parks' argument as to his purported actual innocence is nothing more than an affront to the truth. In that regard the recital at pages 2 through 4 of the attached November 19, 2002 memorandum opinion and order directly refutes Parks' attempt at revisionist history.

But as already stated, there is no need to speak further to the absence of merit in Parks' claims, for he obviously fails to

4

qualify for the extraordinary writ of coram nobis in all events. Here are the standards for such relief, as well articulated in United States v. Esogbue, 357 F.3d 532, 535 (5th Cir. 2004), an opinion that could well have been written for this case:

> We express no opinion on the merits of Esogbue's petition. We note, however, that the writ of coram nobis is an extraordinary remedy to correct errors "of the most fundamental character." United States v. Morgan, 346 U.S. 502, 512, 74 S.Ct. 247, 98 L.Ed. 248 (1954). "Continuation of litigation after final judgment and exhaustion or waiver of any statutory right of review should be allowed through this extraordinary remedy only under circumstances compelling such action to achieve justice." Id. at 511, 74 S.Ct. 247. A writ of coram nobis "will issue only when no other remedy is available and when 'sound reasons exist[ ] for failure to seek appropriate earlier relief.'" United States v. Dyer, 136 F.3d at 422 (quoting Morgan, 346 U.S. at 512, 74 S.Ct. 247). Thus, in order to establish his entitlement to the writ, Esogbue must, inter alia, provide "sound reasons" for his failure to seek permission to assert the claims alleged in his coram nobis petition in a successive petition under 28 U.S.C. §2255 while he was still in custody. An assertion that he would have been unable to satisfy the stringent standards for filing a successive §2255 motion while he was in custody is not such a "sound reason." See Godoski v. United States, 304 F.3d 761, 763 (7th Cir. 2002)("coram nobis is a common-law writ, and it is entirely inappropriate for the judiciary to invoke the common law to override limitations enacted by Congress, such as the period of limitations in §2255"), cert. denied, 537 U.S. 1211, 123 S.Ct. 1304, 154 L.Ed.2d 1059 (2003); Matus-Leva v. United States, 287 F.3d 758, 761 (9th Cir.)("A petitioner may not resort to coram nobis merely because he has failed to meet the AEDPA's gatekeeping requirements. To hold otherwise would circumvent the AEDPA's overall purpose of expediting the presentation of claims in federal court and enable prisoners to bypass the limitations and successive petitions provisions."), cert. denied, 537 U.S. 1022, 123 S.Ct. 544, 154 L.Ed.2d 431 (2002). Here, for example, if Esogbue's assertions amount to hardly more than

5

regurgitation of the claims he has already presented in his §2255 petition, that has been considered and dismissed, or claims that he reasonably could have raised in that petition, it cannot be said that he has made the necessary showing of a "complete miscarriage of justice."

In those terms it appears that part of Parks' current filing gives the show away entirely. After an opening statement that explores the general nature and availability of coram nobis followed by a brief discussion under the caption "JURISDICTION," Parks' Mem. 6 (emphasis added) turns to the "HISTORY OF CASE" and states in part:

> In November 2001 the Petitioner was sentenced to 30 months in a federal prison, <u>and petitioner is presently serving his sentence at the Federal Correctional Institution in Sandstone, Minnesota</u>. Petitioner began serving his sentence on January 31, 2002.

By definition that was obviously written by Parks <u>before</u> his release, at a time when a motion under Section 2255--and not an application for coram nobis relief--would have been the remedy available to Parks to address the claimed grievances that he now asserts. And any such Section 2255 motion could <u>not</u> have been pursued without his seeking--and obtaining--permission to do so from the Court of Appeals (see the final paragraph of Section 2255 and the provisions of Section 2244 that it incorporates).

But even if Parks were somehow able to explain away that statement at Mem. 6, which on its face provides a telltale clue as to when he was armed with the ability to advance what he now tenders, he would still fail here. Parks recognizes the

6

requirement of timeliness that is spelled out in such cases as Esogbue, and here is all that he says to explain why he did not act earlier (Mem. 3):

> The third condition is a reasonable explanation why relief was not sought earlier. After recognizing the flaws in the indictment, it does strike this party that professionals reviewing the document should have readily observed the flaws. Why and how the government has been able to obtain convictions with indictments of this form that blatantly violate the requirements of due process for 40 years and more is beyond the comprehension of this layperson. Denial of effective counsel has been repeatedly declared to justify any action in coram nobis. If professionals, including those on the bench who are authorized to review indictments sua sponta [sic], have overlooked the defect for 40 years, it is submitted that this layperson is justified in not seeing the flaw previously.

That attempted explanation is patently without merit--it just won't wash in the circumstances of this case.

In sum, Parks' effort to invoke the writ of coram nobis fails here for precisely the reasons that have been explained in the quoted excerpt from the Esogbue opinion and, among others, the cases cited there. Hence Parks' motion for such relief is denied out of hand.

                                                                                     _____
                                                          Milton I. Shadur
                                                          Senior United States District Judge

Date: November 22, 2004

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JAMES PARKS, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) No. 02 C 8143 |
| | ) |
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Respondent. | ) |

MEMORANDUM OPINION AND ORDER

James Parks ("Parks") has tendered a self-prepared 28 U.S.C. §2255 ("Section 2255") motion that challenges the 30-month sentence that this Court imposed following Parks' entry of a guilty plea. To that end Parks has filled in the blanks in a preprinted Section 2255 form made available to such pro se prisoner litigants, and he has accompanied that form with a 15-page accompanying "Supplemental Brief in Support of 28 U.S.C. 2255 Motion" ("Brief")--a document obviously prepared with the major assistance of someone having familiarity with legal matters and authorities. This Court has reviewed Parks' total submissions, and it finds them insufficient as a matter of law.

Parks' only expressly advanced grounds for relief, as called for and stated in the portion of the printed Section 2255 form that requires a concise statement of all such grounds, are three in number:

    1. the asserted ineffective assistance of counsel in failing to challenge a purported "defective and untimely

indictment";

    2. the purportedly unwarranted "leadership enhancement," referring to the two-level increase in offense level ruled on by this Court at sentencing pursuant to Sentencing Guideline ("Guideline") §3B1.1(c); and

    3. his counsel's asserted ineffectiveness in failing to investigate and argue matters that, Parks says, would have resulted in "safety valve relief" (most often referred in Parks' papers as "safety value relief") in the decision as to his sentence.

Despite that directive for completeness set out in the Section 2255 form, Parks has also advanced a number of other matters that he claims entitle him to relief.

This Court recalls all aspects (1) of the crime to which Parks and his two codefendants pleaded guilty and (2) of the proceedings involving all three defendants, and it has further fortified its recollection by listening to the tape recordings of Parks' July 18, 2001 guilty plea and of his November 14, 2001 sentencing proceeding. It has given full consideration to all of the matters raised by Parks, and it finds them totally wanting as a predicate for Section 2255 relief.

It must be said that it comes with particularly ill grace for Parks now to complain about the quality of representation by his lawyer (or more accurately lawyers--at the time of his

sentencing he was represented by the third of his appointed counsel, Scott Frankel, Esq.).[1] This was a case in which the government had Parks and his codefendants dead to rights on conspiracy charges: Parks was Chief of Police of the Dixmoor Park District Police Department,[2] whose sole function was the exercise of jurisdiction over a tiny "tot lot" that contained a few pieces of playground equipment (that was the only property of

---

[1] It is worth quoting from this Court's September 17, 2001 letter to Chief Judge Joel Flaum in support of the request for Criminal Justice Act fees by Parks' second lawyer, James Graham, Esq., whom this Court has observed over the years to be a skilled and responsible member of this District Court's Federal Defender Panel:

> As Graham's report reflects, Parks switched to a guilty plea after the case had been set and fully prepared for trial. In addition, the plea agreement that was tendered to and accepted by me appeared to be the product of responsible negotiation on behalf of Parks in a case that posed difficult problems for the defense. There is no reason that Parks' subsequent second-guessing of that choice, which has caused Graham's withdrawal as counsel and the appointment of a new CJA lawyer to represent Parks at sentencing (or perhaps to seek withdrawal of his plea), should derogate from what I have said.

And it is also noteworthy that after shedding attorney Graham, Parks still knowingly and voluntarily (as established by this Court's painstaking inquiries at the time Parks' guilty plea was taken) chose to go through with the plea agreement that attorney Graham had negotiated on his behalf. At the time of sentencing, after attorney Frankel had made the arguments on Parks' behalf that this Court found persuasive in moderating the Guidelines calculation and Parks' sentence, it invited Parks to make any statement he wished in allocution--and Parks said only this:

> I think my attorney said it. I think he spoke for me, sir.

[2] Dixmoor is a small Chicago suburb.

3

the Park District). Nonetheless Parks and his cohorts hatched a plot to sell Police Department officerships to people for substantial payments of money[3]--thus conferring on those "officers" (who were really local businessmen) a sham status that provided them with the opportunity to sport badges and to own and carry weapons legally. Although that scheme may not have originated with Parks (and this Court did not treat him as the originator, either for purposes of determining his Guideline sentencing range or in imposing the resulting sentence), it was plain beyond a reasonable doubt that Parks was not only an integral player but that he received and exercised unfettered dominion over the funds that were paid by the new "officers" for their positions and credentials.

When the probation officer who was assigned to the case prepared Parks' Presentence Investigation Report ("PSI"), she included a three-level increase in the offense level under Guideline §3B1.1(b) on the premise that Parks was a "manager or supervisor (but not an organizer or leader)" in criminal activity that "was otherwise extensive." That was also the government's position, and Assistant United States Attorney Theodore Chung argued hard in support of that position. Parks' defense counsel

---

[3] Under the evidence the amounts that were charged varied materially (Parks' Plea Agreement ¶3 referred to $1,500 as a typical payment), a variance that obviously did not bear on the existence or illegality of the conspiracy.

4

at sentencing (attorney Frankel) opposed that position both vigorously and, more importantly for Parks, persuasively.

Although the legal question was close, in this Court's view defense counsel had the better of it. This Court therefore rejected the three-level increase, instead deciding to apply a two-level increase under Guideline §3B1.1. And that reduced Parks' total offense level from 20 (as had been proposed in the PSI and by government counsel) to 19, so that Parks' sentencing range was reduced from 33-41 months to 30-37 months.

As for Parks' actual sentence, this Court also found his lawyer's strong presentation equally persuasive, and it sentenced Parks at the very bottom of the Guideline range--30 months in custody, followed by an appropriate period of supervised release. Against that backdrop, it is especially troublesome to find Parks attacking, as assertedly constitutionally inadequate, the high quality representation that was afforded him at sentencing by his appointed counsel.

To turn to Parks' grounds for relief asserted in the Section 2255 form, his first claim of a purportedly defective and untimely indictment is simply frivolous: There was certainly at least one act in furtherance of the conspiracy that was within the limitations period. And needless to say, no lawyer can be faulted for having failed to advance such a frivolous argument on behalf of his or her client.

5

As for Parks' next challenge, in which he cavils at the two-level role-in-the-offense enhancement ultimately applied by this Court, it is of course true as a matter of the merits that a Section 2255 motion cannot take the place of an appeal--and Parks took no appeal on that or any other basis. But because a disposition of that challenge on such a procedural ground would no doubt prompt Parks--given his currently manifested mindset--to charge that his lawyer was constitutionally inadequate in failing to launch such an appeal, this Court instead addresses the merits--or more accurately the lack of merit--of that challenge.

In criticizing the role of Parks' counsel in that aspect of the sentencing determination, Parks urges that it was improper for him to be labeled as "the leader, supervisor or manager" (emphasis added) of the established conspiracy. That position is mistaken, for Guideline §3B1.1(c) speaks instead of "an organizer, leader, manager or supervisor"--but more importantly, there is no way in which Parks could have been extricated from that kind of status as decided by this Court, and so Parks' counsel cannot be charged with ineffectiveness for his representation on that score either.

As for Parks' asserted "safety valve" claim, no argument that his defense counsel could have advanced would have led to a departure downward and hence to a lesser sentence. Both the PSI and the arguments by Parks' counsel made this Court very much

aware of the tragedy involved when a law enforcement officer with many years of impeccable service became embroiled in the earlier-described criminal activity. Indeed, during the sentencing proceeding this Court likened the situation to an Aristotelian tragedy--a "fall from grace." All of the factors in Parks' favor were adduced by his counsel and led this Court to sentence him at the bottom of the Guideline range--but this Court's evaluation of Parks' betrayal of the public trust <u>in light of</u> that very background and position foreclosed any favorable consideration of a downward departure by this Court. Again no delinquency can fairly be laid at defense counsel's door.

As for the other grounds that appear to be suggested in Parks' accompanying Brief, none of them calls for any different conclusion. For example, Parks' claim that the offense should not have been treated as involving more than minimal planning is absurd. Next, Parks offers no suggestions as to any type of pretrial or post trial motions for relief that could colorably have been advanced by Parks' counsel on his behalf. And as to any other contentions that are set out in the Brief without having been specified as grounds in the Section 2255 motion itself, this Court has reviewed all of them and has found them all wanting.

Accordingly "it plainly appears from the face of the motion and any annexed exhibits and the prior proceedings in the case

that the movant is not entitled to relief in the district court (Rule 4(b) of the Rules Governing Section 2255 Proceedings in the United States District Courts). That being so, the same Rule 4(b) calls for the summary dismissal of the motion, and this Court so orders.[4]

                                                                */s/ Milton I. Shadur*
                                                Milton I. Shadur
                                                Senior United States District Judge

Date: November 19, 2002

---

[4] Although Parks has accompanied his motion with a "Declaration in Support of Request To Proceed In Forma Pauperis," no filing fee is required for a Section 2255 motion. That request is accordingly denied as moot.

```
              IN THE UNITED STATES DISTRICT COURT
           FOR THE NORTHERN DISTRICT OF ILLINOIS
                       EASTERN DIVISION
```

JAMES PARKS,                    )
                                )
          Plaintiff,            )
                                )
     v.                         )    No.  02 C 8143
                                )         (01 CR 35)
UNITED STATES OF AMERICA,       )
                                )
          Defendant.            )

MEMORANDUM ORDER

Because this Court's November 19, 2002 memorandum opinion and order ("Opinion"), having been misfiled and consequently delayed in entry as the result of a clerical error, crossed in the mails the self-prepared document authored by James Parks ("Parks") and captioned "Motion For Leave To Amend 28 U.S.C. § 2255 Motion To Vacate, Set Aside Or Correct Sentence," this Court issued a December 20, 2002 memorandum that:

    1. returned Parks' filing to him to allow him to decide what action he might wish to take and

    2. advised Parks that any replacement submission he might send in would be treated as having been received on the same December 16 date as his motion for leave to amend. In response Parks has resubmitted the identical documentation, simply having re-executed the papers on December 26, 2002.

There is no reason to change the analysis and conclusions already reached in the Opinion. Parks' current filings persist in advancing his misconceived notion that Count Two of the

Indictment, the one to which he pleaded guilty, was untimely returned (an asserted jurisdictional defect), so that the representation provided by Parks' counsel was constitutionally inadequate because counsel had failed to urge that position.

But the indictment was returned on January 16, 2001, and the evidence in support of the Count Two conspiracy charge included (among other conduct) the late January or early February 1996 reinstatement at Parks' instance of someone who had paid a bribe to become a Dixmoor Park District "police officer," who had then been suspended because of a failure to sell or purchase the required allotment of tickets to a fund-raising function and who had then made good on the requirement after the suspension. Because at least one overt act that was committed during the course of, and in furtherance of, the charged conspiracy thus took place less than five years before the return of the indictment (and what has just been outlined is only exemplary), the indictment was timely.

In short, Parks' fundamentally mistaken arguments as to untimeliness have gained nothing by their repetition. And critically as to the assertedly inadequate representation by Parks' counsel, this Court need only repeat what it said in the Opinion: No lawyer can be faulted for not having advanced a legally frivolous argument of that type on behalf of his client.

In summary, then, the original summary dismissal of Parks' Section 2255 Motion is reconfirmed. This action remains

terminated under both Parks' original Section 2255 motion and his proposed amendment.

_____
Milton I. Shadur
Senior United States District Judge

January 3, 2003